## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **NATHANIEL SHRIEVES, JR.**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-4865-KSM** |
| **PHILADELPHIA FACILITIES MANAGEMENT CORPORATION**, et al., | |
| Defendants. | |

### MEMORANDUM

**MARSTON, J.**                                               **December 8, 2020**

Nathaniel Shrieves, Jr., alleges that his former employer, Philadelphia Facilities Management Corporation (PFMC) and former union, Gas Works Employees' Union of Philadelphia, Local 686 (the Union), breached their collective bargaining agreement (CBA) when they did not allow Shrieves to arbitrate or grieve his termination.  In his Amended Complaint, Shrieves brings claims against PFMC and the Union under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and under the Pennsylvania Public Employe Relations Act[1] (PERA), 43 Pa. Con. Stat. § 1101.903.  (Doc. No. 9.)  Philadelphia Gas Works (PGW)[2]  and the Union each moved to dismiss all claims against them.  (Doc. Nos. 11, 19.)  After the parties fully briefed the Motions to Dismiss, Shrieves moved for leave to file a second amended complaint, which includes the same LMRA and PERA counts as the Amended Complaint and adds claims for intentional discrimination against both Defendants under 42

---

[1] The short title of the Act is "Public Employe Relations Act."  43 Pa. Con. Stat. § 110.201.

[2] PGW asserts that it has been misidentified as PFMC, and that PGW is the proper party.  (*See* Doc. No. 11.)

U.S.C. § 1981 and against PFMC under 42 U.S.C. § 1983.  (Doc. No. 25.)  PGW opposes the

Motion for Leave to File a Second Amended Complaint.  The Union did not respond to the

Motion.

## I.    *Factual Background*

Accepting all allegations in the proposed Second Amended Complaint as true, the

relevant facts are as follows.[3]  PFMC hired Shrieves on November 23, 2009 as a "Helper in the

Field Service Department," and he worked with the company until he was fired on July 17,

2019.[4]  (Doc. No. 25-1 at ¶¶ 10, 11.)  During his tenure with PFMC, Shrieves was a dues-paying

member of the Union, and therefore, was protected by the collective bargaining agreement

between the Union and PFMC.  (*Id.* at ¶¶ 12, 81.)  Under the CBA, PFMC had the right to

terminate employees only "for cause," and a discharged employee had the right to grieve and

arbitrate his or her termination pursuant to the grievance protocol.  (*Id.* at ¶¶ 82–83.)  This CBA

was in effect during the relevant time period.  (*Id.* at ¶ 81.)

Over the years, Shrieves worked his way up from helper to service technician, and on

May 26, 2016, he was sent to a women's shelter to inspect their gas meter.  (*Id.* at ¶¶ 14, 16–17.)

While there, he asked the shelter's supervisor how a woman qualifies for the shelter's services.

(*Id.* at ¶ 23.)  The supervisor responded that they were open to everyone and gave Shrieves her

---

[3] In his Motion for Leave to File a Second Amended Complaint, Shrieves states that he has not substantially altered the factual averments from the Amended Complaint.  (Doc. No. 25-12 at p. 6.)  The Court has confirmed that, except for the new factual allegations included under his discrimination claims, the facts listed in the two complaints are essentially identical.

[4] Shrieves avers that he was hired by "PGW," but that PGW is "not 'an identifiable legal entity or agency' but rather 'the collective name for all the real and personal property by which the City of Philadelphia furnishes gas to customers.'"  (Doc. No. 25-1 at ¶¶ 6, 10 (quoting *Modern Shoppers World-Mkt Airy Corp. v. Phila. Gas Works*, 643 A.2d 136, 138 (Pa. Commw. Ct. 1994)).)  Because PFMC operates and manages PGW, Shrieves alleges that PFMC is his actual employer.  (*Id.* at ¶¶ 7–8.)  At this stage, we accept Shrieves' averment that he worked for PFMC, not PGW.  However, we note that throughout the Amended Complaint and proposed Second Amended Complaint, Shrieves refers to PFMC and PGW interchangeably.  (*See, e.g.*, Doc. No. 9 at ¶ 5; Doc. No. 25-1 at ¶¶ 120–22 (referring to "PFMC/PGW").)

supervisor's phone number. (*Id.* at ¶ 25.) Shrieves left. (*Id.* at ¶ 26.) A week later, Shrieves was called to PFMC headquarters because someone from the shelter had complained about his conduct during the service call. (*Id.* at ¶ 27.) Shrieves had his union representative with him at this meeting and explained his version of the events that occurred while he was at the women's shelter. (*Id.* at ¶¶ 27–28.) PFMC suspended Shrieves pending an investigation. (*Id.* at ¶ 28.)

On June 16, 2016, PFMC concluded that Shrieves was "aggressive and threatening" with the shelter employees and that he had questioned them to figure out whether his children's mother, with whom he was in a custody battle, was residing there.[5] (*Id.* at ¶¶ 29, 31.) PFMC terminated Shrieves for violation of its "workplace violence/threats policy . . . ." (*Id.* at ¶ 29.) However, Shrieves was later reinstated pursuant to a last chance agreement (LCA), which explained that any future violation of a "major work rule violating the Company's Corporate Discipline Policy" would result in Shrieves' immediate termination without recourse to the CBA's grievance or arbitration procedures. (*Id.* at ¶¶ 36, 38, 85; Doc. No. 25-2.)

Shrieves had no further disciplinary problems until three years later, on June 28, 2019, when he went to a customer's home on a service call. (Doc. No. 25-1 at ¶ 42.) Consistent with the company's call-ahead procedure, Shrieves attempted to call the customer on his way to her home, but he was unable to reach her due to problems with his company-issued phone. (*Id.* at ¶ 45.) Shrieves drove to the location anyway. (*Id.*) After knocking on the door but receiving no response, he called the customer again. (*Id.* at ¶¶ 48–49.) The call connected this time, but the customer stated that she was 20 to 30 minutes away from the home. (*Id.* at ¶ 49.) Because Shrieves could not wait, he designated the assignment "Can't Get In" and left. (*Id.*) The

---

[5] Shrieves denies this allegation and asserts that he knew the mother of his children did not reside at the shelter because he picked up and dropped off his children at her home. (Doc. No. 25-1 at ¶ 30.) He also asserts that PFMC failed to give him or his union representatives a copy the shelter supervisor's statements. (*Id.* at ¶ 34.) At this stage, we accept Shrieves' averments as true.

customer complained to PFMC, and Shrieves was told to report to headquarters on Monday, July 1.  (*Id.* at ¶¶ 50–51.)

Shrieves reported to headquarters every working day from July 1 to July 16, when PFMC held a disciplinary hearing on the incident.  (*Id.* at ¶ 53.)  Shrieves, two union representatives, and PFMC management attended the hearing.  (*Id.* at ¶ 54.)  At the end of the hearing, the company found that Shrieves' "failure to call ahead was a major work rule violation" and fired him effective the next day.  (*Id.* at ¶¶ 55, 57–58; Doc No. 25-3.)  Shrieves' union representatives told him that they would file a grievance on his behalf, but they did not.  (Doc. No. 25-1 at ¶¶ 60–63.)

## II.    *Procedural History*

In October 2019, Shrieves filed a complaint against PGW in this Court, arguing that PGW breached the CBA when it fired him "without cause" and refused to allow him to arbitrate or grieve his termination because of the terms in the LCA.  (Doc. No. 1 at ¶¶ 70–81.)  He asserted that this breach gives rise to a claim under § 301 of LMRA, and that the LCA is an unenforceable contract because it is contrary to public policy and the product of undue influence.  (*Id.* at ¶¶ 70–90.)  PGW moved to dismiss the Complaint.  (Doc. No. 5.)  While that Motion was pending, the Court held a pretrial conference, and on November 26, 2019, the Court issued a Scheduling Order, which among other things, stated that all "motions to amend the complaint . . . shall be filed within fourteen (14) days of the date of this Order" — or by December 10, 2019. (Doc. No. 7 at ¶ 1.)  The Scheduling Order also stated that all "fact discovery shall be completed no later than March 27, 2020," and that the case "will be listed for trial on June 4, 2020."  (*Id.* at ¶¶ 2, 19.)

On December 5, 2019, a few days before the amendment deadline, Shrieves filed his

Amended Complaint, which removed PGW as a party and added PFMC and the Union.  (Doc. No. 9.)  As before, Shrieves contends that PFMC and the Union breached the CBA when they refused to allow him to arbitrate or grieve his termination.  (Doc. No. 9.)  He argues that this breach gives rise to a claim under § 301 of the LMRA (Counts I and II) and amounts to a violation of the PERA (Count III).  (*Id.*)  PGW — stating that it has been misidentified as PFMC — moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that it is not an "employer" subject to the LMRA and that Shrieves has failed as a matter of law to state a claim against it under the PERA.  (Doc. No. 11.)  The Union also moves to dismiss under Rules 12(b)(1) and 12(b)(6), arguing that Shrieves' LMRA claim fails against the Union for the same reason that it fails against PFMC, and that once the federal claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the PERA claim.  (Doc. No. 19.)

On February 26, 2020, the case was randomly reassigned from the Honorable Timothy J. Savage to the Honorable Karen S. Marston.  (Doc. No. 21.)  During a status conference on March 11, 2020, the parties informed the Court that they viewed discovery as being "on pause" pending a ruling on Defendants' Motions to Dismiss and that they would need an extension of the discovery deadline, which was set to expire on March 27, 2020.  After this discussion, the Court suspended the deadlines in the Scheduling Order pending a decision on the Motions to Dismiss.[6]  (Doc. No. 24.)  Shrieves requested permission to file a surreply on the pending

---

[6] Shrieves' counsel suggests that the Court's decision to suspend the Scheduling Order was not "due to the impending discovery deadline and pending Motions to Dismiss" and notes that the Court did not, in its Order, "point[ ] to a future deadline or triggering event" that would reinstate the Scheduling Order.  (Doc. No. 31 at p. 4.) Although the Court did not include this qualifying language in its Order, Plaintiff's counsel should know that the Scheduling Order was suspended because of the impending discovery deadline and the pending Motions to Dismiss. The status conference focused almost entirely on this issue, and the Court decided to suspend the Scheduling Order *only* after all the parties said that they viewed discovery as "on hold" pending a ruling on the Motions to Dismiss and that they would need significant additional time to complete discovery.  Plaintiff's counsel, in particular, requested an additional 90 days for discovery.

Motions, which the Court granted and ordered the surreply be filed by March 16.  (*Id.*)

Instead of filing a surreply, Shrieves filed a Motion for Leave to File a Second Amended Complaint.  (Doc. No. 25.)  In addition to reasserting his claims under the LMRA and PERA, Shrieves seeks to add claims for intentional race discrimination against both Defendants.  (*See* Doc. No. 25 (asserting race discrimination claims against both Defendants under 42 U.S.C. § 1981 and against PFMC under § 1983).)  Shrieves argues that we should allow his amendment under Federal Rule of Civil Procedure 15 because it would not unfairly prejudice Defendants. (Doc. No. 25-12.)  PGW — again asserting that it has been incorrectly identified as PFMC — opposes the Motion, arguing that Shrieves has acted with undue delay and that the amendment is futile because it would fail to state a claim upon which relief can be granted.  (Doc. No. 26.)  The Union has not opposed the Motion.

On August 6, 2020, the Court ordered Shrieves and PFMC to submit supplemental briefing on "whether there is good cause under Federal Rule of Civil Procedure 16(b) for allowing the amended pleading."  (Doc. No. 28.)  Supplemental briefing was completed on August 30, 2020.  (Doc. No. 31.)  For the reasons discussed below, we will deny Plaintiff's Motion for Leave to File a Second Amended Complaint and grant Defendants' Motions to Dismiss the Amended Complaint.

## III.   *Shrieves' Motion for Leave to File a Second Amended Complaint*

### A.   *Legal Standard*

Generally, a motion to file an amended pleading is governed by Federal Rule of Civil Procedure 15, which allows a party to "amend its pleading once as a matter of course within 21 days after serving it, or . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all

other cases, a party may amend its pleading only with the opposing party's written consent or the

court's leave," which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The burden is on the party opposing the amendment, and the "touchstone of the rule is a showing

of prejudice" to the opposing party.  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D.

Pa. 2010).  "In the absence of substantial or undue prejudice, denial [of a motion to amend] must

be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure

to cure deficiency by amendments previously allowed or futility of amendment."  *Heyl &*

*Patterson Int'l, Inc. v. F. D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

However, when a party seeks leave to amend a pleading after a deadline set by a court

order, "the decision whether to allow the amendment is controlled by Rule 16(b)," which states

that a scheduling order "may be modified only for good cause and with the judge's consent."

*Price*, 737 F. Supp. 2d at 279.  Once the deadline in the scheduling order has passed, "the party

seeking the amendment is effectively asking the court not only for leave to amend its pleading,

but also the scheduling order," which means that the "party's request now implicates the

effective administration of justice."  *Id.*  Accordingly, the party must show "good cause in order

to procure the court's consent."  *Id.*; *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316,

318 (3d Cir. 2020) (affirming district court's denial of motion to amend because "Rule 16(b)(4)

applies once a scheduling-order deadline has passed, and Premier did not show good cause");

*Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) ("[O]nce the

pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party

must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling

order before the trial court can consider, under Rule 15(a), the party's motion to amend its

pleading."); *cf. E. Mins. & Chem. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (affirming the

district court's order denying motion to amend under Rule 16(b) and concluding that "the District Court acted well within its discretion when it denied Eastern's motion to amend the complaint six months after the amendment and joinder deadlines had expired").

### B.    Discussion

In his supplemental briefing,[7] Shrieves maintains that we should analyze his Motion to File a Second Amended Complaint under Rule 15's more lenient standard because when he "filed his motion for leave on March 16, 2020, the November 26, 2019 scheduling order provision for filing an amended pleading was suspended," and the ordinary meaning of the term "suspend" means "to cause to cease for a time" or "to discontinue temporarily, but with an expectation or purpose of resumption."  (Doc. No. 29 at p. 5 (quoting *Suspend*, Black's Law Dictionary (6th ed. 1990).)  PGW responds that Rule 16 governs Shrieves's Motion because "the date by which Plaintiff had to move to amend his complaint (December 10, 2019) expired long before the Court ever suspended the Scheduling Order (March 11, 2020) and long before Plaintiff moved for leave to file a Second Amended Complaint (March 16, 2020)."  (Doc. No. 30 at p. 8.)

We agree with PGW that Rule 16's good cause standard applies to Shrieves' Motion to File a Second Amended Complaint because nothing in this Court's Order suspending the Scheduling Order reopened or altered the previously expired deadline for amending the pleadings.  As a general matter, the Court may alter some of the deadlines in a scheduling order,

---

[7] As noted above, Shrieves's initial briefing argued that amendment was warranted under Federal Rule of Civil Procedure 15 and did not discuss Rule 16.  PGW argues that the Court should find that Shrieves "has waived any argument that he has been diligent in seeking to modify the scheduling order because he relied solely on Rule 15."  *See Premier Comp Sols.*, 970 F.3d at 319 ("In its motion, Premier relied solely on Rule 15(a); it did not address Rule 16(b)(4) except in reply to UPMC.  So the District court was entitled to find Premier forfeited its argument under Rule 16(b)(4).").  Although the Court could find that Shrieves waived this argument, we will not do so here.  Because neither party discussed good cause in its initial briefs, and the Court ordered supplemental briefing on this issue before the Third Circuit's opinion in *Premier Comp Solutions*, we will consider Shrieves' argument that he has demonstrated good cause for amending the scheduling order deadline under Rule 16.

without reopening other, expired deadlines. *Cf. Providence Pediatric Med. Daycare, Inc. v. Alaigh*, Civ. No. 10-2799-NLH-KMW, 2013 WL 11331184, at *4 (D.N.J. Aug. 29, 2013) (analyzing a motion to amend under Rule 16 because the "Court issued a Scheduling Order on March 2, 2012 which set the deadline for the parties to seek amendments to pleadings for June 29, 2012" and although "other deadlines were extended in subsequent Scheduling Orders, the deadline by which parties were to seek amendments to pleadings was never extended"); *Thomason v. Toyota Motor Eng'g & Mfg. N.A., Inc.*, Civ. A. No. 6:14-cv-04895-JMC, 2017 WL 10901214, at *5 (D.S.C. Mar. 6, 2017) (analyzing a motion to amend under Rule 16 because "the fact that a subsequent scheduling order does not include a deadline that was included in a previous scheduling order does not necessarily render that deadline inoperative").

Turning to our Order in this case, we find that it did not render inoperative the previously expired deadline for amending the pleadings. As Shrieves acknowledges, the ordinary meaning of the term "suspend" is to temporarily postpone or defer. *See Suspend*, Black's Law Dictionary (11th ed. 2019) ("To interrupt; postpone; defer."). Applying this ordinary meaning, the most reasonable interpretation of the Court's order suspending the case management deadlines is that it suspended only the *pending* deadlines. It makes no sense to suspend a deadline that has already expired because there is nothing to "postpone" or "defer." Instead, we view the March 11, 2020 Order as suspending only the pending deadlines, and find that the expired deadlines, including the deadline for amending the pleadings, remained "operative."[8]

---

[8] Shrieves also argues that "Rule 16(b)(4) is not implicated" because Rule 16 was "'intended to [e]nsure the efficient resolution of cases and, more importantly minimize prejudicial surprise.'" (*Id.* at p. 6 (quoting *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 684 (3d Cir. 2003)).) "Given the time afforded to all parties to respond to Plaintiff's motion for leave, the suspension and expiration of case deadlines, [the Union's] lack of participation in this motion for leave matter and the parties' lack of discovery," Shrieves argues that his "motion poses little to no 'prejudicial surprise' in this litigation" and Rule 16 should not apply. (*Id.*) Even if Shrieves is correct that the Motion poses little to no "prejudicial surprise," we remain bound by the Third Circuit's clear dictate that Rule 16(b)(4)'s good cause standard applies when a party moves to amend after the deadline set in a scheduling order. *See Premier Comp Sols., LLC*, 970 F.3d at 319.

Because the deadline for amending the pleadings was December 10, 2019, and Plaintiff did not file his Motion for Leave to File a Second Amended Complaint until March 16, 2020, we will analyze the Motion under Rule 16 before turning to Rule 15.  *See Premier Comp Sols., LLC*, 970 F.3d at 319 ("Before addressing Premier's arguments on appeal, we take this opportunity to clarify that when a party moves to amend or add a party after the deadline in a district court's order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies."); *Chancellor*, 501 F. Supp. 2d at 701 ("[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading.").

Under Rule 16, the party moving to amend must demonstrate "good cause" for amending the scheduling order deadline.  "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order."  *Price*, 737 F. Supp. 2d at 279; *see also* Fed. R. Civ. P. 16, advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); *Premier Comp Sols., LLC*, 970 F.3d at 319 ("[W]e have repeatedly recognized — and we reaffirm today — that whether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence.").  If the moving party "knows or is in possession of the information that forms the basis of the later motion to amend" before the deadline has passed, "the party is presumptively not diligent."  *Price*, 737 F. Supp. 2d at 280.

The proposed Second Amended Complaint includes new factual allegations only in relation to the two counts for racial discrimination.  Specifically, it states that: (1) Shrieves is "an African American, black/brown male," (2) the LCA is "indefinite" because it does not include an

end date; (3) PFMC failed to give Shrieves a copy of the hearsay allegations (by the women's shelter and the customer) made against him during the hearings on June 16, 2016 and July 16, 2019; and (4) five white PGW service technicians were treated "more favorably th[an]" Shrieves. (Doc. No. 25-1 at ¶¶ 101–03, 109.)  Of these, the only facts which were arguably not discoverable before the amendment deadline are those related to the white service technicians. Therefore, we must look to whether Shrieves has carried his burden of showing that this information was not discoverable, with diligence, before December 10, 2019.

Shrieves provides a litany of reasons[9] for why this Court should find good cause, but only one of those justifications goes to his ability to timely discover the facts supporting his discrimination claims:  "[T]he discrimination claims required investigation and research made more difficult since PGW terminated Plaintiff's employment, thereby limiting his access to people and information to support his claims regarding specific similarly situated non-protected class FSD employees who were treated better than him."  (Doc. No. 29 at p. 7.)  In his supplemental reply brief, Shrieves again argues that he acted with "diligence in researching and investigating legal theories including non-protected class comparable PGW employees with

---

[9] Shrieves states that he has demonstrated good cause for the amendment because:

(a) the clerk of court *sua sponte* reassigned this matter to the current judge, 3 months after the November 26, 2019 scheduling order and before any ruling on the outstanding motions to dismiss; (b) the parties have not engaged in discovery; (c) the 14 day deadline for filing amended pleadings in the November 26, 2019 scheduling order contemplated the then primary underlying cause of action, breach of collective bargaining agreement ("CBA") under section 301 of the Labor Management Relations Act ("LMRA"), *inter alia*, against PGW only and addition of [the Union]; (d) based on the hybrid claims of breach of the CBA against PFMC and breach of duty of fair representation against [the Union], Plaintiff had a shortened statute of limitations time period, i.e., six months, to raise those claims; (e) the discrimination claims required investigation and research made more difficult since PGW terminated Plaintiff's employment, thereby limiting his access to people and information to support his claims regarding specific similarly situated non-protected class FSD employees who were treated better than him; (f) the current judge suspended case deadlines in the then controlling November 26, 2019 scheduling order which have now all expired; and (g) there is no undue delay based on (a), (b), and (f).

(Doc. No. 29 at p. 7.)

LCAs." (Doc. No. 31 at p. 5.)

But other than these conclusory statements, Shrieves does not describe his investigation or explain when, how, or from whom he learned that five white service technicians received more favorable LCA terms than he did. *Cf. Weisberg v. Weisberg*, Civil Action No. 2:19-cv-3521-KSM, 2020 WL 4015239, at *3 (E.D. Pa. July 16, 2020) (finding that the defendant failed to show good cause for missing the deadline to file an amended answer and third party complaint because "he has not identified with specificity which new information he received during discovery alerted him to his [third party claims], nor has he explained how he was unable, with diligence, to find that information before the deadline in the Court's Scheduling Order"); *Arietta v. City of Allentown*, Civil Action No. 04-CV-5306, 2006 WL 8459383, at *1 n.1( E.D. Pa. June 19, 2006) (finding that "plaintiffs' bare allegation that their subpoena was based upon newly discovered information is not, in itself, sufficient to establish good cause to extend the discovery deadline"); *Thomason*, 2017 WL 10901214, at *2 (explaining that the court previously denied the plaintiff's motion for leave to amend because "Plaintiff's imprecise description of the evidence left the court unable to determine whether the evidence could have been discovered with the exercise of reasonable diligence prior to the scheduling order's deadline or whether the proposed amendments, in fact, were based on such evidence").

Instead, Shrieves argues that "PGW does not provide a scintilla of evidence that Plaintiff knew or was in possession of information forming the basis of his intentional discrimination claims at the outset of the litigation." (Doc. No. 31 at p. 6.) But this argument flips the burden of proof. It is *Shrieves*'s burden — not PGW's — to show that this information was not discoverable, with diligence, before the amendment deadline. *Chancellor*, 501 F. Supp. 2d at 701 ("[U]nder Rule 16(b), the burden is on the party seeking the amendment to show 'good

cause.'"); *see also Weisberg*, 2020 WL 4015239, at *4 ("Without a more specific description of the new information revealed during discovery . . . this Court cannot find that Richard was diligent in filing his motion or that he has carried *his burden* of demonstrating good cause for altering the deadlines in the Court's Scheduling Order." (emphasis added)).

Shrieves notes that "while initiating and maintaining the instan[t] action, [he] has been fighting to receive unemployment compensation to support himself and his children, diligently trying to find employment to maintain his housing and life; and has suffered health battles with pneumonia, i.e., fluid in his lungs, including hospitalization, which he cannot properly address due to loss of employment and medical coverage." (Doc. No. 29 at p. 8.)  Although we sympathize with Shrieves's condition, he has not explained how this condition kept him from timely asserting his discrimination claim.  Shrieves states that he was hospitalized from September 26, 2019 through October 8, 2019 (*id.* at p. 9), but despite this hospitalization, he was able to initiate this lawsuit and timely file the Amended Complaint.  Without more information, the Court cannot find that Shrieves' medical condition — unfortunate as it is — kept him from pursuing his discrimination claim when he and his attorney(s) were able to diligently pursue his other claims against PFMC and the Union.[10]  *Cf. Chancellor*, 501 F. Supp. 2d at 701–02 ("Carelessness, or attorney error, . . . is insufficient to constitute 'good cause' under Rule 16(b).").

Last, we note that Shrieves never asked the Court for an extension of the deadline for amending the complaint.  He did not request an extension from Judge Savage before the case

---

[10] Shrieves also argues that he has shown good cause for allowing the amendment, because without the amendment, his discrimination claims may be precluded by *res judicata* or the applicable statute of limitations. (Doc. No. 29 at p. 8.)  Shrieves does not explain how these doctrines relate to his diligence in investigating and bringing his discrimination claims.  And in any event, Shrieves cannot circumvent Rule 16's good cause standard merely because he failed to act on his discrimination claims in the time and manner allowed.

was transferred, nor did he mention newfound evidence or needing to amend at the status conference that we held just days before he filed the Motion to Amend. *Cf. Napolitano v. Ragan & Ragan PC*, Civil Action No. 15-2732 (FLW), 2017 WL 278475, at *3 (D.N.J. Jan. 20, 2017) ("Plaintiff should have either filed her Motion to Amend the Complaint or made an affirmative application to extend the deadline for filing an amended pleading before November 13, 2015. . . . Plaintiff cannot demonstrate good cause for moving to amend the pleading more than six months beyond the Court ordered deadline."); *Harbor Laundry Sales, Inc. v. Mayflower Textile Serv. Co.*, Civil Action No. 09-6259 (NLH), 2011 WL 6303258, at *5 (D.N.J. Dec. 16, 2011) ("Judge Williams' finding that Plaintiff failed to make a sufficient showing of good cause under Rule 16 where Plaintiff neglected to adequately explain its inability to file the motion to amend before the September 10, 2011 deadline, or at least request a timely extension of that deadline, was not clearly erroneous or contrary to law.").  Instead, at the status conference, Shrieves asked only that he be allowed to file a surreply to Defendants' Motions to Dismiss.

In sum, because Shrieves does not identify how, when, or from whom he learned that five white service technicians received more favorable treatment than him, we have no way of knowing whether this information was discoverable before December 10, 2019.  Therefore, Shrieves has not met his burden of showing that he could not, with diligence, have brought his discrimination claims before the amendment deadline,[11] and we find that he has not demonstrated good cause for altering the deadline for amending the pleadings.  *Cf. E. Mins. &*

---

[11] Shrieves has not, for example, shown that he only discovered the facts needed to bring his discrimination claim during discovery with the parties.  To the contrary, Shrieves repeatedly notes that "the parties have not engaged in discovery," with the exception of a limited document production by PGW on December 2, 2019.  (Doc. No. 29 at p. 7; *see also* Doc. No. 31 at p. 8 ("The parties at no time engaged in discovery as outlined in the November 26, 2019 scheduling order, except as noted.").)  Shrieves has not argued that he only learned about the more favorable treatment of white service technicians because of this production, and even if he had, PGW produced those documents three days before Shrieves filed his Amended Complaint and eight days before the deadline for amending the pleadings.

*Chem. Co.*, 225 F.3d at 340 (affirming district court order denying motion to amend under Rule 16(b) and concluding that "the District Court acted well within its discretion when it denied Eastern's motion to amend the complaint six months after the amendment and joinder deadlines had expired"); *Chancellor*, 501 F. Supp. 2d at 703 (denying defendant's motion to amend his answer because he "possessed the relevant knowledge on which to base a statute of limitations defense at the outset of the litigation and has not proposed a clear and cognizable justification for the five-month delay beyond the time set forth in the scheduling order"); *Weisberg*, 2020 WL 4015239 at *1 (denying the defendant's motion to amend his answer and assert counterclaims because it was filed six weeks after deadline for adding new parties and the defendant failed to explain "how he was unable, with diligence, to [find the allegedly new] information before the deadline in the Court's Scheduling Order").

Because Shrieves has not demonstrated good cause under Rule 16 for reopening the deadline for amending the complaint, we will deny his Motion for Leave to File a Second Amended Complaint.[12]

---

[12] In the alternative, even if Shrieves had shown good cause under Rule 16, we would deny the majority of the Motion as futile under Rule 15. *See Heyl & Patterson Int'l, Inc,* 663 F.2d at 425 (explaining that denial of a motion to amend must be grounded in "substantial or undue prejudice" to the opposing party, or "in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment"). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000). Specifically, Shrieves's LMRA counts against PFMC and the Union are futile for the reasons discussed below in connection with Defendants' Motions to Dismiss. *See id.* ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). As for the intentional discrimination claims brought against PFMC, the § 1981 count fails to state a claim upon which relief can be granted because PFMC is a municipal agency, and "Section 1983 remains the exclusive remedy for violations of Section 1981 by a state actor." *Valentin v. Phila. Gas Works*, No. Civ.A.03–3833, 2004 WL 690805, at *7 (E.D. Pa. Mar. 29, 2004); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (explaining that "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state government units"); *McGovern v. City of Phila.*, 554 F.3d 114, 120–21 (3d Cir. 2009) ("In sum, because Congress neither explicitly created a remedy against state actors under § 1981(c), nor expressed its intent to overrule *Jett*, we hold that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state government units.'" (quoting *Jett*, 491 U.S. at 733)). Last, the § 1983 count against PFMC fails because Shrieves does not allege that the discrimination was the result of an agency policy, practice, or custom, as required by *Monell v. N.Y. Department of Social Services*. *See* 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

## IV.     *Defendants' Motions to Dismiss*

Because we will deny Shrieves' Motion for Leave to File a Second Amended Complaint,

the Amended Complaint remains the operative pleading, and we will consider Defendants'

Motions to Dismiss (Doc. Nos. 11, 19).  PGW — asserting that it has been improperly

designated as PFMC — moves to dismiss all counts against it under Rule 12(b)(6).  It argues that

the LMRA claim (Count I) should be dismissed because PFMC is not an "employer" subject to

the LMRA, and the PERA claim (Count III) should be dismissed because "an aggrieved public

employee has no right to sue his employer for breach of a collectively bargained agreement."

(Doc. No. 11.)  The Union has similarly moved to dismiss all counts against it under Rules

12(b)(1) and 12(b)(6).  It argues that the LMRA claim (Count II) against the Union fails because

Shrieves is a public sector employee and cannot sue his union under the Act and that once the

other claims are dismissed, we should decline to exercise supplemental jurisdiction over the

PERA claim (Count III).  (Doc. No. 19-2.)

### A.     *Legal Standard*

To survive a motion to dismiss under 12(b)(6), a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

policy, inflicts the injury that the government as an entity is responsible under § 1983.").  Not only does Shrieves not
identify a policy, practice, or custom, he goes one step further and affirmatively states that he "does *not* bring his
intentional discrimination claim against PFMC based on an action that 'unconstitutionally implements or executes a
policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts
may fairly be said to represent official policy.'"  (Doc. No. 27 at p. 6 (emphasis added).)  For those reasons, even if
we were to find that Shrieves has shown good cause for amendment under Rule 16, we would deny the Motion for
Leave to File a Second Amended Complaint as to Counts I, II, III, and part of Count IV because amendment would
be futile under Rule 15.  The Union did not oppose the Motion to Amend, so we pass no judgment on the futility of
Count IV as against it.  And because we will deny supplemental jurisdiction over Count V in connection with
Defendants' Motions to Dismiss, we make no ruling on the futility of that Count at this time.

that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In reviewing a motion to dismiss the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations. *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017). The court may also "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

A motion to dismiss brought pursuant to Rule 12(b)(1) is treated similarly to a Rule 12(b)(6) motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Whether a Rule 12(b)(1) motion presents a "facial" or a "factual" attack dictates the scope of review. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial challenge asserts an insufficiency on the face of the complaint. *Id.* A factual attack disputes the factual basis supporting subject matter jurisdiction. *Id.* The Union makes a facial challenge to subject matter jurisdiction, arguing that Shrieves lacks standing to bring claims against it under the LMRA because he is not a private sector employee.

In reviewing a facial challenge, we consider only the allegations in the complaint and the attached documents. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citation omitted). We accept the allegations as true and construe them in the light most favorable to the plaintiff to determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *See Gould Elecs., Inc.*, 220 F.3d at 176 (citations omitted); *see also Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Thus, in considering the Union's facial challenge under Rule 12(b)(1), we apply the same standard of review used in considering a

motion to dismiss under Rule 12(b)(6).  Because we apply the same standard in deciding the two Motions to Dismiss, we will analyze Defendants' arguments together.

### B.    Discussion

#### 1.    Counts I & II: § 301 of the LMRA

In Counts I and II, Shrieves contends that PFMC breached the CBA when it denied him the opportunity to arbitrate or grieve his termination and that the Union breached its duty of fair representation when it refused to file a grievance on his behalf.  (Doc. No. 9.)  He brings both Counts under § 301 of the LMRA, which grants federal district courts jurisdiction over "[s]uits for violation of contracts . . . between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  States and their "political subdivisions" are not "employers" under the Act.  *Id.* § 152(2) ("The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation . . . or any State or political subdivision thereof . . . ."); *see also Manfredi v. Hazleton City Auth. Water Dep't*, 793 F.2d 101, 104 (3d Cir. 1986) (finding that the defendant water department was a "political subdivision" and therefore, not an "employer" under the LMRA).  PGW argues that Count I must be dismissed because PFMC is a political subdivision, and therefore, is not an "employer" under the LMRA.  (Doc. No. 11-1 at pp. 7–10.)

The LMRA does not define the term "political subdivision," but the Supreme Court has adopted the definition formulated by the National Labor Relations Board (NLRB).  *Crilly v. Se. Pa. Transp. Auth.*, 529 F.2d 1355, 1358 (3d Cir. 1976) (citing *NLRB v. Nat. Gas Util. Dist.*, 402 U.S. 600 (1970)).  Under that definition, an entity is an exempt political subdivision if it is "'either (1) created directly by the state, so as to constitute departments or administrative arms of

the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" *Id.* (quoting *NLRB*, 402 U.S. at 604–05).

Both tests are satisfied here.[13]  PFMC was incorporated by the City.  *Sphere Drake Ins. Co. v. Phila. Gas Works*, 782 A.2d 510, 511 (Pa. 2001) ("PFMC is a non-profit corporation incorporated by the Philadelphia City Solicitor's Office in 1972 . . . ."); *In re Hawes*, State Ethics Comm'n No. 98-046-C2, at *2 (Order No. 1263 Dec. 4, 2002).[14]  It manages and operates PGW on behalf of the City for its sole and exclusive benefit.  *See* Pa. Dep't of State Corp. Bureau 15-17905 (Rev. 11-72) [hereinafter Articles of Incorporation] at ¶ 3 ("The purpose of the corporation is to provide management services for facilities owned by the City of Philadelphia on a non-profit basis for the benefit of all citizens of said City."); *see also Sphere Drake Ins. Co.*, 782 A.2d at 512; *In re Hawes*, State Ethics Comm'n No. 98-046-C2, at *2.  The mayor of the City appoints its board.  Articles of Incorp. at ¶ 6(b) ("Vacancies in the Board of Directors . . . shall be filled by persons designated by the Mayor of the City of Philadelphia."); *see also Sphere Drake Ins. Co.*, 782 A.2d at 512; *In re Hawes*, State Ethics Comm'n No. 98-046-C2, at *2. PFMC personnel must be approved by the Philadelphia Gas Commission, a unit of the City's Department of Public Property.  *Sphere Drake Ins. Co.*, 782 A.2d at 512; *In re Hawes*, State Ethics Comm'n No. 98-046-C2, at *3.  Any personnel who are not approved must be replaced with personnel approved by the Commission.  *Sphere Drake Ins. Co.*, 782 A.2d at 512; *In re Hawes*, State Ethics Comm'n No. 98-046-C2, at *3.  In short, PFMC was created by the City and

---

[13] Because PFMC's Articles of Incorporation are publicly available and were filed with a state agency, we take judicial notice of them and consider them in deciding this motion to dismiss.  *See Keystone Redev. Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (explaining that the court may "consider matters of public record" in deciding motions to dismiss) (quotation marks omitted); *cf., e.g.*, *In re Essar Steel Minn. LLC*, Adv. Proc. No. 17-50001, 2019 WL 2246712, at *8 n. 11 (D. Del. Bank. Ct. May 23, 2019) ("The Court takes judicial notice of ESML's articles of incorporation.").

[14] *In re Hawes* is available at https://www.ethicsrulings.pa.gov/WebLink/DocView.aspx?id=46337 &searchid=1b1edd52-4ff2-4c7f-83f9-3a5d75941145&dbid=0&repo=EthicsLF8&cr=1.

its personnel ultimately answer to the City.  Under either test set forth by the United States

Supreme Court, PFMC is a "political subdivision," and not an "employer" under the LMRA.  *See*

*Crilly*, 529 F.2d at 1358.

Citing two cases from the Pennsylvania Commonwealth Court, Shrieves argues that

PFMC is not a political subdivision, but "a private, non-profit corporation governed by

Pennsylvania nonprofit corporation laws."[15] (Doc. No. 9 at ¶ 5 (citing *Modern Shoppers World-*

*Mt. Airy Corp.*, 643 A.2d at 138; *Phila. Facilities Mgmt. Corp. v. Biester*, 431 A.2d 1123, 1129

(Pa. Commw. Ct. 1981)).)  *Modern Shoppers* and *Biester* did find that "PFMC is not an agency

of the City [of Philadelphia]." *Modern Shoppers World-Mt. Airy Corp.*, 643 A.2d at 138 (citing

*Biester*, 431 A.2d at 1129).  But those cases were overruled or superseded by the Pennsylvania

Supreme Court in *Sphere Drake*.  In *Sphere Drake*, the court found that the City's control over

PFMC is "pervasive":

> PFMC provides management services for the City and its subsequent
> contract with the City, which arose in conjunction with a City Ordinance,
> confirms that it exists for the sole purpose of managing PGW.  The Mayor
> of Philadelphia selects PFMC's Board of Directors and the City is responsible for
> indemnifying and holding harmless the directors, officers and employees of
> PFMC from all claims and liability arising in connection with their management
> of PGW.
>
> PFMC's authority is limited to that specifically granted by the City. Its
> management and operation of PGW is for the sole and exclusive benefit of
> Philadelphia and its citizens. PFMC personnel are subject to the approval of the
> Philadelphia Gas Commission, which is within the City Department of Public
> Property.  PFMC must submit an annual budget to the City Director of Finance
> and file various financial reports with different officials and departments within
> the City.  Should PFMC ever be dissolved, its assets would vest in the City.
>
> In addition, employees of PFMC are treated comparably to other City
> workers.  Thus, the City Director of Finance is required to determine a supplemental
> retirement amount to be invested for the benefit of retiring PFMC employees.  The

---

[15] PGW argues that it, not PFMC, is the proper party in interest, and that PGW is a public entity not subject to the LMRA.  (Doc. No. 11-1 at pp. 2, 7.).  As mentioned above, at this stage, we accept Shrieves' averment that he worked for PFMC, not PGW.  Thus, we do not address whether PGW is an "employer" under the LMRA.

deferred compensation plan established for PFMC employees qualifies as an eligible deferred compensation plan applicable to employees of a "State, political subdivision of a State, and any agency or instrumentality of a State or political subdivision of a State" within the meaning of § 457 of the Internal Revenue Code. 26 U.S.C. § 457.   PFMC employees also participate in a pension plan maintained pursuant to a City Ordinance.

782 A.3d at 511–12.  For those reasons, the Pennsylvania Supreme Court held that PFMC is a "body corporate and politic" and a "local authority."  *Id.* at 514.

Shrieves argues that we should ignore *Sphere Drake*'s holding because the court's analysis pertained only to tort liability under the Pennsylvania Political Subdivision Tort Claims Act (PSTCA) and did not "summarily overrule" *Modern Shoppers*.  (Doc. No. 17 at p. 8 (citing *McShea v. City of Philadelphia*, 995 A.2d 334 (Pa. 2010); *Helsel v. Complete Care Servs.*, 797 A.2d 1051 (Pa. Commw. Ct. 2002)).)  But *Sphere Drake*'s holding was grounded in the Pennsylvania Statutory Construction Act; it was not limited to the PSTCA or to tort liability.[16] *See Sphere Drake*, 782 A.2d at 512, 514 ("PFMC is a 'body corporate and politic' as contemplated in the Statutory Construction Act's definition of a 'local authority.'").  And contrary to Shrieves's suggestion, the Pennsylvania Supreme Court discussed *Modern Shoppers* at length in *Sphere Drake*, noting that the Commonwealth Court in *Modern Shoppers* was "faced with the same issue that is presented in the matter *sub judice*," i.e., whether PFMC is a "local

---

[16] Shrieves argues that *McShea v. City of Philadelphia* and *Helsel v. Complete Care Services* show that *Sphere Drake*'s conclusion is limited to the PSTCA context.  (Doc. No. 17 at p. 8.)  We disagree.  Although those cases rely on *Sphere Drake*'s PSTCA holding, that reliance does not negate the rest of the *Sphere Drake* opinion, which analyzes at length whether PFMC is a local agency under the Statutory Construction Act.  In addition, neither *McShea* nor *Helsel* states that it is limiting *Sphere Drake*'s PFMC conclusion to the tort context, mentions PFMC, or discusses *Modern Shoppers* or *Biester*.  *See McShea*, 995 A.2d at 341 (citing *Sphere Drake* in support of its conclusion that "pursuant to [the PSTCA's] plain language, and this Court's precedent interpreting the legislature's clear intent to immunize political subdivisions from tort — not contract — liability, a political subdivision cannot waive tort immunity by contract"); *Helsel*, 797 A.2d at 1057 (citing *Sphere Drake* in support of conclusion that "the overall purpose of the governmental immunity provisions . . . is to limit governmental exposure to tort liability for its acts"); *id.* at 1057 n.5 (distinguishing *Sphere Drake*'s conclusion that PFMC is a "local agency" by finding that "no similar concerns are present in regard to [the plaintiff], which is an independent, for-profit corporation engaged in the business of providing management services for institutions in multiple states").

authority" under the Statutory Construction Act. *Id.*  After analyzing the nature of PFMC's

relationship with the City of Philadelphia, the court held that "PFMC is a local agency" and

"specifically reject[ed] the Commonwealth Court's contrary decision in *Modern Shoppers*

*World*" and, by implication, the *Biester* case upon which *Modern Shoppers* was based. *Id.* at

517.

       Given the Pennsylvania Supreme Court's holding in *Sphere Drake* and our own review of

PFMC's Articles of Incorporation, we find that PFMC is a "political subdivision" and therefore,

not an "employer" under the LMRA.  Because PFMC is not an employer under the Act, we lack

jurisdiction over Shrieves's LMRA claim against the company and will dismiss Count I of the

Amended Complaint with prejudice.

       For similar reasons, the Union asks that we also dismiss Count II.  Citing *Felice v. Sever*,

985 F.2d 1221 (3d Cir. 1993), the Union argues that if PFMC is a political subdivision — and

therefore, not an employer subject to the LMRA — then Shrieves is not an "employee" under the

LMRA, and he cannot bring an action against the Union under the Act.  (Doc. No. 19-2 at p. 5.)

*See Felice*, 985 F.2d at 1227 ("[T]he absence of federal jurisdiction over the claim against the

employer necessarily means there is no basis for federal jurisdiction over the employee's unfair

representation claim."); *see also Lande v. City of Bethlehem*, No. 07-2902, 2010 WL 5173154, at

*7 (E.D. Pa. Dec. 10, 2010) ("Under the LMRA, claims against a municipal employee's union

cannot survive dismissal of the claims against the defendant municipality.") (citations omitted);

*Jones v. City of Atlantic City*, No. 07-CV-2405, 2007 WL 4545898, at *2 (D.N.J. Dec. 19, 2017)

("[A] District Court lacks subject matter jurisdiction over a plaintiff's claims that a political

subdivision of a state breached a CBA and that a union breached its duty of fair representation in

connection with such a CBA.") (citations omitted).

Shrieves responds that *Felice*'s holding is limited to "hybrid" cases where the breach of fair representation claim against the union is intertwined with the breach of contract claim against the employer.  (Doc. No. 20 at pp. 6–7.)  He argues that Count II is not a "hybrid" claim because the "facts in the instant case" give rise to an "independent" claim against the Union for breach of the duty of fair representation.  (*Id.* at p. 6.)  Specifically, Shrieves asserts that the LCA did not permit him "to exhaust the CBA remedies and/or abide by any finality provisions" before bringing this case in federal court and that the language of the LCA is ambiguous as to whether it prohibits Shrieves from grieving and arbitrating PFMC's "determination that a violation of tis terms occurred, or prohibits [him] from grieving and arbitrating termination of his employment." (*Id.* at p. 7.)  This alleged ambiguity means that the CBA does not establish grievance and arbitration as "the exclusive remedy" for breach, validity, and/or enforcement of the contract, and therefore, the Union acted in bad faith when it failed "to promote [his] interests and rights under the CBA and in fact acted against his interests by refusing to process a grievance on his behalf and to communicate with him after his termination."  (*Id.*)

But Shrieves's argument misses the point.  The Union is not arguing that we must dismiss Count II because it is a "hybrid" claim that necessarily falls with Count I.  Instead, it argues that we lack jurisdiction over the LMRA count because Shrieves was a public employee and therefore, he cannot bring a § 301 suit against the Union.  We are compelled to agree.  *See Crilly*, 529 F.2d at 1357 n.5 ("[I]f SEPTA is not an employer for the purposes of the Act, the Local's members cannot be employees, and there is no federal jurisdiction over either the fair representation or the breach of contract claims."); *Manifredi*, 793 F.2d at 104 & n.5 ("[W]e hold that the Water Department is a 'political subdivision' and not an employer under the LMRA and that the union therefore does not represent 'employees' for purposes of the LMRA.

Consequently, the district court was without subject matter jurisdiction to act on appellants'

complaint.").  Regardless of whether Count II is labeled a "hybrid" claim or independent of

Count I, it fails because we lack jurisdiction over it.[17]

Because PFMC's status as a political subdivision and Shrieves's status as public employee

are incurable defects in Shrieves's LMRA claims, we will dismiss with prejudice Counts I and II

of the Amended Complaint.

### 2.    *Count III: Violation of PERA*

That leaves Shrieves's allegation that the LCA provisions prohibiting him from grieving

or arbitrating his termination breach the CBA, and therefore violate the PERA's mandate that all

matters "arising out of the interpretation of the provisions of a collective bargaining agreement"

---

[17] In the alternative, we find that Shrieves has asserted a hybrid claim in this case, and therefore, the Union's claim must be dismissed along with the claim against PFMC.  In *Felice*, the Third Circuit offered guidance on the difference between hybrid and non-hybrid LMRA claims.  The court explained that "[o]rdinarily, an employee files a claim against the union alleging breach of the duty of fair representation together with a claim against the employer alleging breach of the collective bargaining agreement."  985 F.2d at 1226.  In this "hybrid" suit, the "plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the duty of fair representation claim against the union, and vice versa."  *Id.* ("Thus, the claims are 'inextricably interdependent.'").  *Manfredi* and *Crilly* both involved "'hybrid' claims" because "the unfair representation claim was based on the union's failure to pursue a grievance on behalf of the plaintiff employee against the employer political subdivision."  *Id.* at 1227; *see also Harkins v. U.S. Steel Corp.*, 354 F. App'x 698, 703 (3d Cir. 2009) (finding that the plaintiff's claim that the employer violated a CBA when it denied him a promotion and his claim that the union breached its duty of fair representation by mishandling a grievance related the employer's decision, "is considered a hybrid claim under Section 301 of the Act").

By contrast, when the fair representation claim is related to the union's negotiation and administration of a collective bargaining agreement, there usually is "no possible breach of contract claim against the employer."  *Id.*  In these non-hybrid LMRA cases, "the union is acting in its role as exclusive bargaining representative in the collective bargaining process."  *Id.*  Here, Shrieves alleges  that PFMC breached the CBA when it fired him "without cause" and denied him the right to arbitrate or grieve that termination, and the Union breached its duty of fair representation when it failed to file a grievance on his behalf following that termination.  (*See* Doc. No. 20 at p. 7 (arguing that the Union failed "to promote [his] interests and rights under the CBA and in fact acted against his interests by *refusing to process a grievance on his behalf* and to communicate with him after his termination") (emphasis added).)  In other words, his claim against the Union is based on the Union's alleged failure to file a grievance or arbitrate on his behalf after PFMC fired him and is not related to the Union's "role as exclusive bargaining representative in the collective bargaining process."  Therefore, we find that the Amended Complaint presents a "hybrid" suit and dismissal of Count I against the employer compels dismissal of Count II against the Union.  *See Manfredi*, 793 F.2d at 104 n.5 (explaining that where jurisdiction is based upon the LMRA, dismissal of claims against the public employer compels dismissal of claims against union).  The exhaustion case cited by Shrieves — *DeGrandis v. Children's Hosp. Bos.*, 806 F.3d 13 (1st Cir. 2015) — does not counsel otherwise.  (Doc. No. 25-1 at p. 14 n.5.)

be arbitrated.  (Doc. No. 9 at ¶¶ 100–08; *see also* Doc. No. 17 at pp. 10–11 (stating that this

claim is being asserted "as an alternative to his federal law breach of contract claim").)  PGW

argues that we must dismiss this claim because under Pennsylvania law, a public employee has

no right to sue his employer for breach of a collective bargaining agreement.  (Doc. No. 11-1 at

pp. 10–11.)  The Union argues only that we should decline to exercise supplemental jurisdiction

over this claim once the federal law claims have been dismissed.  (Doc. No. 19-2 at p. 7.)

"Where the claim over which the district court has original jurisdiction is dismissed

before trial, the district court *must* decline to decide the pendent state claims unless

considerations of judicial economy, convenience, and fairness to the parties provide an

affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)

(emphasis in original) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.

1995)); *see also* 28 U.S.C. § 1367(c)(3).  No exceptions apply here.  There is no reason to retain

jurisdiction over Shrieves's state law claims, which he may assert in state court.  *See, e.g.*, *Segers*

*v. Williams*, No. 13-2413, 2014 WL 285078, at *5 n.9 (E.D. Pa. Jan. 27, 2014).  Therefore, we

decline to exercise supplemental jurisdiction and will dismiss Count III without prejudice.

## V.     *Conclusion*

We deny Shrieves's Motion for Leave to File a Second Amended Complaint because he

has not shown good cause for the amendment as required by Rule 16 and in the alternative,

amendment as to Counts I, II, III, and Count IV (as against PFMC) would be futile under Rule

15.  Because the Amended Complaint remains the operative pleading, we may consider

Defendants' Motions to Dismiss.  Because PFMC is a political subdivision and Shrieves is a

public employee, we lack jurisdiction over the LMRA claims, and dismiss Counts I and II of the

Amended Complaint with prejudice.  We decline to retain supplemental jurisdiction over the

PERA claims in Count III and will dismiss Count III without prejudice.

An appropriate order follows.